**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. JOSEPH A. MAYERCHECK, | ) | |
| | ) | **Civil Action No. 2:14-cv-611** |
| **Plaintiff,** | ) | |
| | ) | **Judge Cathy Bissoon** |
| v. | ) | **Magistrate Judge Lisa Pupo Lenihan** |
| | ) | |
| | ) | |
| **BARBARA J. MAYERCHECK/** | ) | |
| **TUCCIARONE**, *et al.*, | ) | **ECF Nos. 12, 14, 16, 17, 18, & 30** |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss filed by (1) Defendants Judge Christine L. Donohue, Judge Christopher Feliciani, Judge Rita Hathaway Judge Jacqueline O. Shogan, Judge David N. Wecht, and Master H. Gervase Fajt (ECF No. 12), (2) Defendant Westmoreland County, PA (ECF No. 14), (3) Defendant William Wiker (ECF No. 18), and (4) Defendant Barbara J. Mayercheck/Tucciarone (ECF No. 30), be granted and the Amended Complaint be dismissed with prejudice. It is further recommended that the claims against the Commonwealth of Pennsylvania be *sua sponte* dismissed with prejudice. It is further recommended that the Motions for Summary Judgment (ECF Nos. 16 & 17) filed by Plaintiff Dr. Joseph A. Mayercheck against Defendants Barbara J. Mayercheck/Tucciarone and William Wiker, respectively, be denied.

### II.    REPORT

Plaintiff, Dr. Joseph A. Mayercheck ("Plaintiff" or "Dr. Mayercheck"), acting *pro se*, brought this action against three judges on the Pennsylvania Superior Court—Judge Christine

L.Donohue ("Judge Donohue"), Judge Jacqueline O. Shogan ("Judge Shogan"), and Judge David N. Wecht ("Judge Wecht") (collectively, the "Superior Court Judges"); two judges on the Court of Common Pleas of Westmoreland County, Pennsylvania—Judge Christopher Feliciani ("Judge Feliciani") and Judge Rita Hathaway ("Judge Hathaway") (collectively, the "Westmoreland County Judges"); Master H. Gervase Fajt of the Court of Common Pleas of Westmoreland County ("Master Fajt"); Attorney William Wiker ("Attorney Wiker"); Barbara Mayercheck/Tucciarone ("Tucciarone"[1]), and the Commonwealth of Pennsylvania ("Commonwealth"), by filing a Complaint in this Court on May 12, 2014. Subsequently, Plaintiff filed an Amended Complaint (ECF No. 9) on June 13, 2014, in which he alleges, in essence, that Defendants conspired against him to deprive him of his federally protected rights during the litigation of his divorce from Barbara Tucciarone. The Amended Complaint sets forth sixteen separate counts, including federal civil rights claims under 42 U.S.C. §§1983-1986, including a conspiracy claim under §1985, claims for violations of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and various common law tort claims.

For relief, Plaintiff seeks a declaratory judgment by this Court that would (1) dismiss and void the Westmoreland County, PA order of Court dated October 3, 2011 issued by Judge Feliciani, (2) order the Court of Common Pleas of Westmoreland County, PA to enforce the legal divorce contract made by Plaintiff and Barbara Mayercheck on May 23, 2000, (3) stay any further court proceedings in the divorce case no. 546 of 2002D in Westmoreland County by Judge Meagan Bilik-DeFazio, and (4) award financial penalties and hold in contempt of court

---

[1] Although Plaintiff names "Barbara Mayercheck/Tucciarone" as a Defendant in his Amended Complaint, his ex-wife states that she has been incorrectly identified, and that her correct name is "Barbara Tucciarone." *See* ECF No. 30. Therefore, the Court will refer to Defendant Barbara Mayercheck/Tucciarone throughout this Report as "Barbara Tucciarone."

those who fail to carry out these remedies.  (Am. Compl., ¶28.)  Additionally, Plaintiff also seeks damages in excess of twenty-eight million dollars, plus punitive damages, attorneys' fees and costs.  (*Id.* at ¶¶61-76.)

All of the Defendants have moved to dismiss this case with prejudice under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).  *See* ECF Nos. 12, 14, 18 & 30.  Plaintiff has responded to these motions and has also filed motions for summary judgment against Defendants Wiker and Tucciarone, *see* ECF Nos. 16 & 17.  These motions are now ripe for disposition.

### A. <u>Legal Standards</u>

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings and, in particular, *pro se* complaints, are to be liberally construed. *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001)); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint *pro se*, the pleadings must be liberally construed and the Court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name").  Indeed, a *pro se* complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins*, 293 F.3d at 688 (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688).

A motion to dismiss under Rule 12(b)(1) may be treated  as either a facial or factual challenge to the court's subject matter jurisdiction.  *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).  In the case at bar, Defendants are asserting a facial challenge, as evidenced by their briefs in support of their Motions to Dismiss.  In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6).  *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996).  Likewise, a motion to dismiss for lack of subject matter jurisdiction is appropriate when based upon the *Rooker-Feldman* doctrine.  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) (holding that under Congressional legislation, only the Supreme Court has the authority to entertain a proceeding to reverse or modify the judgment of a state court, as to do so would constitute an exercise of appellate jurisdiction; district courts, on the other hand, are vested strictly with original jurisdiction and therefore lack authority to review a state court judgment); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding district court has no subject matter jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A

complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57).  The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly, 505 U.S. at 555, & n. 3.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Factual allegations

within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B. <u>Factual Background</u>

In the present action, Plaintiff reiterates many of the same allegations previously detailed in a lawsuit he filed in 2008 in this District against some of the same defendants at No. 2:08-cv-1112, which this Court dismissed with prejudice upon the defendants' motions to dismiss. *See Mayercheck v. Judges of the Pa. Supreme Court*, Civ. A. No. 08-1112, 2009 WL 2524755 (W.D.Pa. Aug. 17, 2009). That judgment was affirmed by the United States Court of Appeals for the Third Circuit at 395 F. App'x 839 (3d Cir. 2010), and the U.S. Supreme Court denied certiorari, 131 S.Ct. 945 (2011).

On October 3, 2011, a final order was entered in Plaintiff's divorce proceedings in the Westmoreland County Court of Common Pleas. (Am. Compl., ¶3.) Plaintiff appealed that order to the Pennsylvania Superior Court (No. 1729 WDA 2011) and the Superior Court Judges named as Defendants herein affirmed the decision of the court below in an unpublished opinion on May 31, 2013. (Am. Compl., ¶6; Pa. Super. Ct. Appeal Docket Sheet, Docket No. 1729 WDA 2011 at 5.) Plaintiff then filed a petition for allowance of appeal with the Pennsylvania Supreme Court which was denied on December 23, 2013. (Am. Compl., ¶7.) Plaintiff now seeks "justice" in this Court to "correct the twelve year violations of [his] Constitutional Rights for Equal Protection under the Laws in Pennsylvania and violations of his federally protected Civil Rights[, as] no remedy is left in the Pennsylvania Courts[.]" *Id.* at ¶1. Plaintiff avers that the alleged

violations of his constitutional and civil rights have been ongoing since the commencement of his divorce proceedings in March 2002. (*Id.*)

Paragraphs one through three[2] of the Amended Complaint reiterate the allegations upon which Plaintiff's 2008 lawsuit was predicated. For a thorough recitation of those allegations, *see Mayercheck*, 2009 WL 2524755, at \*2-\*4. Those allegations and the claims based thereon were brought against Barbara Tucciarone (then Mayercheck), William Wiker, Judges Rita Hathaway and Christopher Feliciani, and Master H. Gervase Fajt, among others, for the same conduct alleged to have occurred in the instant action up to and through the closing of Plaintiff's divorce case on May 15, 2007 by Master Fajt and its subsequent reopening to address additional issues, including the distribution of marital assets.[3] Essentially, in the 2008 lawsuit, Plaintiff claimed that by finding in Barbara Mayercheck's favor in the divorce proceedings, Defendants denied him access to the court system, depriving him of his federally protected rights in violation of 42 U.S.C. §1983. Additionally, Plaintiff asserted that said determinations in favor of his ex-wife were the result of a conspiracy between all Defendants to deprive him of his federally protected rights in violation of 42 U.S.C. §1985. Moreover, Plaintiff alleged that Defendants failed to

---

[2] The Court notes that the Amended Complaint fails to conform with Federal Rule of Civil Procedure 10 and Western District Local Civil Rule 5.1.B. Rule 10 requires that a party's claims be set forth in separately numbered paragraphs which are to be limited to a single set of circumstances, to the extent practicable. LCvR 5.1.B. requires that all text must be double-spaced. The Amended Complaint is single-spaced and clearly combines multiple sets of circumstances in one paragraph which would not be impracticable to state in separate paragraphs. Indeed, paragraph three of the Amended Complaint begins on page three and ends on page six. Although the Court could dismiss the Amended Complaint for failure to comply with the above rules of court, it will proceed to the merits of Defendants' arguments, as the disposition of this frivolous lawsuit need not be delayed any longer.

[3] No date is given as to when the court of common pleas reopened the divorce case, however, the case was clearly reopened before Civil Action No. 08-1112 was filed on August 8, 2008, as the complaint filed in that case contained an allegation that Judge Feliciani reopened the divorce proceedings in violation of his rights. *Mayercheck,* 2009 WL 2524755, at \*4 (citing Compl.,

prevent civil rights violations and seeks damages for said failure under 42 U.S.C. §1986. Plaintiff also brought a Bivens action claim based on alleged violations of his civil rights (¶¶ 7.F., 53) and a retaliation claim against state court judges for reporting bribery and extortion as required by 18 U.S.C. §4 (Compl., ¶¶7.H., 80-81). Finally, as in the case at bar, Plaintiff asserted several common law tort claims, including civil conspiracy and fraud; intentional and negligent infliction of emotional distress; fraudulent, negligent and intentional interference with prospective economic advantage; destruction of his quality of life and creditworthiness; and tortious interference with professional and business relations.

In the present action, the Amended Complaint does not assert any new facts or any actions taken in furtherance of the alleged conspiracy *after* 2008[4] involving Defendants Tucciarone, Wiker, Hathaway, and Fajt. Instead, Plaintiff makes bald conclusions that the only way he could have left the marriage with so few assets while Defendant Tucciarone went from nothing to a millionaire is through conspiracy, judicial retaliation and corruption. (Am. Compl., ¶3, ECF No. 9 at 6.) In addition, Plaintiff accuses Master Fajt of incompetence, malfeasance, and corruption with regard to the Report he issued regarding the distribution of the marital assets, claiming that it violated and fails to adhere to the Pennsylvania Divorce Code. (*Id.*) Plaintiff also blames his unwanted stress and ill health[5] on all of the Defendants. (*Id.*) As to Defendant Feliciani, Plaintiff newly alleges that the final order of the court of common pleas dated October 3, 2011 did not give him a final divorce decree and was told the final order would suffice. (*Id.*)

---

¶38).

[4] Although the Amended Complaint in the instant matter contains more detailed allegations regarding the conduct of Defendants Tucciarone, Wiker, Hathaway, Feliciani, and Fajt during Plaintiff's divorce proceedings, all of the conduct described allegedly occurred between 2002 and 2007. Thus, any claims based on these new allegations are clearly time-barred.

[5] Plaintiff claims he suffered a heart attack and fainted when he read Master Fajt's Report giving

Plaintiff further alleges that he challenged the final order as procedurally defective but Judge Feliciani rejected his challenge. (*Id.*)

Based on these allegations, as well as the more detailed allegations of the Defendants' conduct between March 2002 and 2007, Plaintiff contends that Defendants Tucciarone, Wiker, Fajt and Feliciani conspired to commit fraud and financially and legally harm him and violate his civil rights under 42 U.S.C. §§1983 and 1986, as well as denied his constitutional rights to equal protection under the law.

The other Defendants named in the instant matter are Westmoreland County,[6] Pennsylvania Superior Court Judges Donohue, Shogan, and Wecht, and the Commonwealth of Pennsylvania. The extent of the allegations against Defendant Westmoreland County is that the County is responsible for the administration of the courts and must be held accountable for the corrupt judges. (Am. Compl., ¶4.) As to Defendant Commonwealth of Pennsylvania, Plaintiff merely alleges that it is responsible for paying the salaries of all the corrupt Defendant judges. (*Id.* at ¶5.)

With regard to the Superior Court Judges, Plaintiff alleges that they never read the record and denied the appeal, even though he "presented to the Superior Court that there was defective evidence in his Appeal of the divorce contract". (*Id.* at ¶6.) As such, Plaintiff contends the Superior Court Judges "failed to protect [his] Rights by shirking their duty to read the Record, abide by their oath of office to follow the law and protect and defend the Constitution." (*Id.*) By doing so, Plaintiff contends that the Superior Court Judges conspired with other Defendants

---

his wife all of the marital assets. (Am. Compl., ¶3, ECF No. 9 at 6.)
[6] Although Plaintiff mentions the Westmoreland County Solicitor, R. Mark Geselman, in his Amended Complaint, he is not a named defendant but only mentions Geselman as the individual upon whom service was made on behalf of Westmoreland County. (Am. Compl., ¶4.)

violating his Civil Rights under 42 U.S.C. §§1983 and 1986, as well as denying his constitutional rights to equal protection under the law. (*Id.*) Moreover, Plaintiff alleges that the Superior Court Judges placed at the top of the order that "their Opinion/case description was never to be published in the legal community citing 'Superior Court I.O.P. 65.37'[,]" because they "didn't want it published as it was a bad decision, it contained bad law with lies and inaccuracies and certainly reflected husband's Constitutional violations of his Rights to Equal Protection under the Law." (*Id.*) The Pennsylvania Superior Court Appeal Docket Sheet for Docket No. 1729 WDA 2011 indicates that the disposition of Plaintiff's appeal was an affirmance of the decision below. *See The Unified* JUDICIAL SYSTEM *of* PENNSYLVANIA WEB PORTAL, https://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=1729+WDA+2011.

### D.   <u>Discussion</u>

The Court notes that Plaintiff's Amended Complaint seeks two types of relief. First, Plaintiff asks this Court to issue a declaratory judgment that would, in essence, overturn the state court rulings pertaining to his divorce. (Am. Compl., ¶28.) Additionally, Plaintiff seeks monetary relief for alleged violations of his civil and constitutional rights[7] and Defendants' alleged tortious conduct. (Am. Compl., ¶¶61-76.) The Court will first address the parties' arguments pertaining to the declaratory relief sought, and then turn to the arguments relating to

---

[7] To the extent Plaintiff is attempting to assert a claim directly under the Constitution for alleged violations of his due process and equal protection rights, he is precluded from doing so as none of the Defendants named in this lawsuit is a federal official. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). Thus, his claims alleging violations of the U.S. Constitution are cognizable only under 42 U.S.C. §1983. *Smith v. Sch. Dist. of Phila.,* 112 F.Supp. 2d 417, 430 (E.D.Pa. 2000).

Plaintiff's claims for damages for alleged violations of his civil rights and Pennsylvania common law.

### 1. Declaratory Relief

In support of the motions to dismiss, the Judicial Defendants[8] and Defendants Westmoreland County and Tucciarone initially argue that Plaintiff's claim for declaratory relief is barred by res judicata. In addition, these Defendants and Attorney Wiker argue that the *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction over Plaintiff's claims for declaratory relief.[9] The Court finds that the *Rooker-Feldman* doctrine bars Plaintiff's claim for declaratory relief as more fully set forth below.

### a. Res Judicata or Claim Preclusion

The Judicial Defendants, Westmoreland County, and Tucciarone argue initially that Plaintiff's claim for declaratory relief is barred by *res judicata* or claim preclusion, based on this Court's determination in the 2008 action that it lacked subject matter jurisdiction over Plaintiff's claim for declaratory relief under the *Rooker-Feldman* doctrine, *Maycheck,* 2009 WL 2524755, at *8, and the Third Circuit's affirmance, 359 F. App'x at 842. In response, Plaintiff argues the "federal dismissal of   [his] prior claims were not on the merits but told the State Court proceedings were ongoing. Collateral Estoppel Rule is that the issues raised previously must have been _actually litigated_." Pl.'s Ans. to Judicial Defs.' Mot. to Dismiss, ECF No. 27 at 1.

---

[8] The term "Judicial Defendants" refers to Judge Hathaway, Judge Feliciani, Master Fajt, Judge Donohue, Judge Shogun and Judge Wecht.

[9] Defendants Westmoreland County, Wiker and Tucciarone also argue that and the domestic relations exception to federal jurisdiction likewise divests this Court of subject matter jurisdiction. The Court agrees with Defendants that the domestic relations exception bars the declaratory relief to the extent Plaintiff is asking this Court to intervene in his divorce case in state court, for essentially the same reasons previously set forth in *Maycheck,* 2009 WL 2524755, at *9, *aff'd* 395 F. App'x at 842.

Plaintiff further contends that any legal effort to raise violations of his constitutional rights in the state court proceedings was systematically blocked, and therefore, the merits of his constitutional claims have not been litigated in state court, thus precluding application of res judicata. *Id.*

Recently, the court of appeals aptly summarized the law on claim preclusion in this circuit:

> We have explained that
>
>> [c]laim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities [sic]; and (3) a subsequent suit based on the same cause of action.
>
> *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc.— Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir.1992) (citing *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984)).
>
> In analyzing whether these three elements have been met, we "[do] not apply this conceptual test mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir.2010) (quoting *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir.1999) (internal quotation marks omitted)) (in turn quoting *Athlone*, 746 F.2d at 984).
>
> We further have explained that "[w]e take a 'broad view' of what constitutes the same cause of action" and that "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Sheridan*, 609 F.3d at 261 (emphasis in original) (citing *Churchill*, 183 F.3d at 194) (quoting *Athlone*, 746 F.2d at 983–84). In analyzing essential similarity, we consider several factors: "(1) whether the acts complained of and the demand for relief are the same ...; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the

same ...; and (4) whether the material facts alleged are the same. It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Id.* at 261 (internal quotation marks omitted) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982)); *see also Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 173 (3d Cir.2009) ("This analysis does not depend on the specific legal theory invoked, but rather [on] the essential similarity of the underlying events giving rise to the various legal claims.) (internal quotation marks omitted)."

Thus, res judicata bars a claim litigated between the same parties or their privies in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation. "Moreover, 'res judicata bars not only claims that were brought in the previous action, but also claims that could have been brought.' "*Id.* (internal citations omitted) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d at 171). Further, "[t]he fact that several new and discrete discriminatory events are alleged does not compel a different result. A claim extinguished by res judicata 'includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' "*Id.* at 174 (emphasis in original) (quoting Restatement (Second) of Judgments § 24(1) (1982)).

*Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 276-77 (3d Cir. 2014). Moreover, it is well established that "principles of res judicata apply to jurisdictional determinations—both subject matter and personal." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9 (1982) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Stoll v. Gottlieb*, 305 U.S. 165 (1938)).

In the case at bar, Plaintiff asks this Court to (1) dismiss and void Judge Feliciani's October 3, 2011 order, (2) order the "State Lower Court in Westmoreland County, Pa. to enforce the legal divorce contract made by [Plaintiff and Tucciarone] on May 23, 2000[,]" and (3) stay any further court proceedings in divorce case 546 of 2002D in Westmoreland County by Judge

Meagan Bilik-DeFazio (a non-party to the instant matter).  Am. Compl., ¶¶28.A-C.[10]  The Court

finds that claim preclusion is applicable only to the second item of declaratory relief sought by

Plaintiff.

Applying the three prongs of the claim preclusion test to the facts here, it is undisputed

that the first prong has been met as to all of the declaratory relief requested—a final judgment on

the merits was entered in the 2008 action on August 17, 2009, that judgment was affirmed by the

court of appeals, and the Supreme Court denied certiorari.  As to the second prong, the final

judgment in the 2008 action involved the same parties or their privies as those implicated here

with regard to the declaratory relief requested.  The declaratory relief requested in the present

action appears to be directed at Judge Hathaway, Judge Feliciani, Master Fajt, Judge Meagan

Bilik-DeFazio (a non-party), and the Westmoreland County Court of Common Pleas.  Judge

Hathaway, Judge Feliciani, and Master, among others,  are named defendants in both the 2008

action and the present matter.  Westmoreland County, although not a named defendant in the

2008 action, may be considered to have privity[11] with Judge Hathaway, Judge Feliciani and

---

[10] Plaintiff's fourth request for declaratory relief seeks to have this Court impose financial
penalties and contempt of court for those who fail to carry out these remedies.  Am. Compl.,
¶28.D. Because the Court lacks jurisdiction to order the relief requested in paragraphs 28.A. and
B. of the Amended Complaint under *Rooker-Feldman,* and abstains under *Younger* from
ordering a stay of the divorce proceedings in Westmoreland County Court of Common Pleas as
requested in paragraph 28.C*.,* the relief requested in paragraph 28.D. is moot.

[11] "Privity" is defined as "[t]he connection or relationship between two parties, each having a
legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece
of property); mutuality of interest."  BLACK'S LAW DICTIONARY (9th ed. 2009).  *See also
Greenberg v. Potomac Health Sys., Inc.,* 869 F.Supp. 328, 330 (E.D.Pa. 1994) (citing *DeLeon v.
Slear*, 616 A.2d 380, 389 (Md. 1992) ("a party that is vicariously responsible for the acts of
another party is in privity with that party."); *Avins v. Moll*, 610 F.Supp. 308, 316 (E.D.Pa.1984)
("where the same plaintiff sues in multiple suits on identical causes of action, defendants in the
later suits who were not named as defendants in the earlier suits are entitled to the benefit of res
judicata so long as there is a close or particular relationship with the defendants in the earlier
suit."), *aff'd*, 774 F.2d 1150 (3d Cir.1985)) (internal quotation marks omitted).

Master Fajt, based on Plaintiff's own allegation that Westmoreland County "must be held accountable" for the "corrupt judges [who] preside and Rule in Westmoreland County, Pa." Am. Compl., ¶4. Thus, the second prong of the claim preclusion test has also been met as to all of the declaratory relief requested.

As to the third prong, however, the Court finds that only part of the declaratory relief requested satisfies this prong. Plaintiff has requested an order directing the "State Lower Court in Westmoreland County, Pa. to enforce the legal divorce contract made by [Plaintiff and Tucciarone] on May 23, 2000." Am. Compl., ¶28.B. This declaratory relief was also sought in the 2008 action, which this Court determined was barred by the *Rooker-Feldman* doctrine and the domestic relations exception to federal jurisdiction. Accordingly, the Court finds that the declaratory relief requested in paragraph 28.B. of the Amended Complaint is barred by claim preclusion.

However, the declaratory relief sought in paragraphs 28.A. and C. is raised for the first time in the case at bar and involves actions taken after the commencement of the 2008 action, i.e., the entry of the final order in Plaintiff's divorce case by Judge Feliciani on October 3, 2011, and Judge Meagan Bilik-DeFazio's currently handling of Plaintiff's divorce case. Accordingly, the declaratory relief sought in paragraphs 28.A. and C. is not barred by claim preclusion. Nonetheless, as discussed below, this declaratory relief is barred by the *Rooker-Feldman* and the *Younger* abstention doctrines.

### b. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia*

*Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[12] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also* *Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir.1998). This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also* *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[13] The Court in *Exxon Mobile* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman*. Thus, the court must determine if the plaintiff in the federal

---

[12]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See* *Walker v. Horn,* 385 F.3d 321, 329 n. 22 (3d Cir. 2004) (citations omitted).

[13]The *Rooker-Feldman* doctrine applies to final decisions of lower state courts. *Walker,* 385 F.3d at 329 (citation omitted).

lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.* As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing FED. R. CIV. P. 8(c)).

In 2010, the United States Court of Appeals for the Third Circuit addressed head-on its pre-*Exxon Mobil* formulation of the *Rooker-Feldman* inquiry, rejected it, and established the following test, based on the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil,* 544 U.S. at 284). According to the court of appeals in *Great Western*, the key to determining whether *Rooker-Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement – plaintiff must complain of injuries caused by the state court judgment – is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner,* 449 F.3d at 547). The court of appeals further explained that a useful guidepost in determining the source of the injury is the injury's timing, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test – that the plaintiff must invite federal court

review and rejection of the state court judgment – is closely related to the second requirement. *Id.* at 168 (quoting *Bolden,* 441 F.3d at 1143). The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff. Thus, as construed by the Third Circuit, the *Rooker-Feldman* doctrine is confined to those cases meeting all four requirements of the four-part test.

Here, Plaintiff's Amended Complaint seeks a declaration from this Court that would render the final order of Judge Feliciani in the Court of Common Pleas of Westmoreland County, as affirmed by the Pennsylvania Superior Court and the Pennsylvania Supreme Court by denying allocator, "null and void." Therefore, Plaintiff's claim for declaratory relief falls squarely within the *Rooker-Feldman* framework. *See Rooker*, 264 U.S. at 416; *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). Specifically, Plaintiff's request that this Court dismiss and void the final order of Judge Feliciani entered on October 3, 2011 and order the "State Lower Court in Westmoreland County, Pa." to enforce May 23, 2000 divorce contract between Plaintiff and Tucciarone, would require this Court to overturn the decisions of the state court. This Court does not have jurisdiction to do so. *See Rooker*, 264 U.S. at 416; *Exxon Mobil Corp.*, 544 U.S. at 1522 (citing *Rooker*, 264 U.S. at 416) (holding that, as noted in *Rooker*, Congress empowered only the Supreme Court of the United States with appellate authority "'to reverse or modify a state-court judgment'"). Therefore, the Court recommends that Plaintiff's request for declaratory relief in paragraph 28.A. be dismissed with prejudice.

### c.     *Younger* Abstention Doctrine

To the extent Plaintiff asks this Court to stay further court proceedings in his divorce case before the Judge Bilik-DeFazio in the Court of Common Pleas of Westmoreland County, PA, Defendant Westmoreland County argues that this Court is precluded from doing so under *Younger v. Harris,* 401 U.S. 37 (1971), which requires federal courts to abstain from intervening in ongoing state court proceedings.  *See* ECF No. 15, n. 2; ECF No. 30, ¶14.   The Court agrees.

In *Younger v. Harris*, the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding."  *Yi Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger, supra*).  This principle has been subsequently extended to civil proceedings and state administrative proceedings.  *Yi Yang*, 416 F.3d at 201-02 (citing *Moore v. Sims*, 442 U.S. 415 (1979) (other citations omitted)).   The *Younger* court based its decision on the principles of comity and "the longstanding public policy against federal court interference with state court proceedings."  *Younger*, 401 U.S. at 43. Absent extraordinary circumstances,[14] *Younger* abstention will apply when the following three requirements are met: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (quoting *Addiction Specialists, Inc. v.*

---

[14] Even when all requirements are met, *Younger* abstention is not appropriate when "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted."  *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982); *Younger*, 401 U.S. at 49-50, 53-54).  None of these exceptions is implicated here.

*Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)).  *See also Dixon v. Kuhn,* 257 F. App'x 553, 555 (3d Cir. 2007).

Clearly, all three of these requirements are met in the case at bar.   Plaintiff, in his own pleading, indicates that the divorce proceeding in the court of common pleas is ongoing.   Next, the court of appeals has recognized that state courts have a special expertise and experience with the field of domestic relations, while federal courts have no general jurisdiction over such matters.   *Lazaridis,* 591 F.3d at 671 (citing *Gordon v. Koppel,* 203 F.3d 610, 613 (9th Cir. 2000)). Finally, *Younger* requires only that the plaintiff have "an opportunity to present his federal claims in a state proceeding", *Lazaridis,* 591 F.3d at 670 (quoting *Juidice v. Vail,* 430 U.S. 327, 337 (1977)).   "The 'burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of its claims.'"  *Id.* at 670-71 (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14-15 (1987)).   In the case at bar, Plaintiff has failed to carry this burden.   The Amended Complaint is devoid of any factual allegations that would suggest state procedural law barred presentation of Plaintiff's constitutional claims.   Moreover, in his responsive brief, Plaintiff merely submits that "[a]ny legal effort [by him] to raise [violations of his constitutional rights] in the State Court was systematically blocked."  Pl.'s Ans. to Judicial Defs.' Mot. to Dismiss at 1  (ECF No. 27 at 1).   This conclusory statement is not sufficient, however to meet Plaintiff's burden.

Instead, Plaintiff argues that *Younger* does not apply here because the Pennsylvania Supreme Court denied his last appeal to remedy the constitutional and civil rights violations.  *Id.* at 2 (ECF No. 27 at 2).   This argument is flawed in two respects.   First, Plaintiff's argument actually shows that he did present his alleged constitutional violations to the Pennsylvania appellate courts, but he was not satisfied with the result.   Second, *Younger* applies to the

declaratory relief requested in paragraph 28.C., because Plaintiff is requesting a stay of <u>current</u>, <u>ongoing</u> proceedings in his divorce case in Westmoreland County.    Therefore, Plaintiff has failed to show that *Younger* abstention is inappropriate here.

Accordingly, it is recommended that the Court abstain from entering an order staying the current, ongoing proceedings in Plaintiff's divorce case in Westmoreland County Court of Common Pleas, and that Plaintiff's claim for declaratory relief in paragraph 28.C. of the Amended Complaint be dismissed with prejudice.

### 2.    <u>Monetary Relief</u>

Plaintiff's Amended Complaint also seeks monetary relief from Defendants in the amount of $28 million for alleged violations of his civil rights and common law torts. Defendants raise a number of meritorious arguments in support of dismissal of these claims.   The Court will address these arguments in turn.

### a.    **Claim Preclusion**

As with Plaintiff's claim for declaratory relief, the Judicial Defendants and Tucciarone argue that Plaintiff's claims for monetary relief are likewise barred by *res judicata* or claim preclusion, based on this Court's determination in the 2008 action that it lacked subject matter jurisdiction over Plaintiff's damages claims under the *Rooker-Feldman* doctrine.  *Mayercheck,* *2009 WL 2524755, at *8-9.*    In response, Plaintiff makes the same argument as the one advanced in opposition to Defendants' motion to dismiss his claim for declaratory relief.

In the case at bar, all three criteria for application of claim preclusion have been met as to Judge Hathaway, Master Fajt, Tucciarone, and Wiker.  First, it is clear that a final judgment on the merits was entered in the 2008 action on August 17, 2009, and that judgment was affirmed by the court of appeals.  Second, these Defendants are named parties in both the 2008 action and

the case at bar. Finally, the instant matter is based on the same causes of action as those asserted in the 2008 action. A comparison of the complaints filed in the 2008 action and the case at bar reveals that the acts complained of, the relief demanded, the theories of recovery, and the material facts alleged are essentially the same with regard to Judge Hathaway, Master Fajt, Tucciarone and Wiker. As such, the witnesses and documents necessary for trial would also be the same. Moreover, the Complaint in the instant action does not set forth any new facts or actions involving these Defendants that allegedly occurred after the 2008 action was filed, and therefore, Plaintiff would have known of any and all potential claims against these Defendants at the time he filed the 2008 action. Thus, the third element required for claim preclusion has been met as to these Defendants. Accordingly, the Court finds that Plaintiff's claims for monetary relief against Judge Hathaway, Master Fajt, Tucciarone and Wiker are barred by claim preclusion, and therefore recommends that the Amended Complaint against these Defendants be dismissed with prejudice.

With regard to Judge Feliciani, the Court finds that Plaintiff's claims for monetary relief involving conduct allegedly occurring prior to and up to the filing of the 2008 action are also barred by claim preclusion for the reasons set forth above. In the instant matter, however, Plaintiff also asserts that Judge Feliciani violated his civil rights when he entered the final order in his divorce proceeding on October 3, 2011. Thus, because this conduct occurred after the Court's decision in the 2008 action, any claim for monetary relief predicated on this conduct is not barred by claim preclusion. Nonetheless, as discussed below, Judge Feliciani is entitled to absolute judicial immunity as to such claims.

Similarly, the alleged conduct involving Superior Court Judges Donohue, Shogan and Wecht occurred after entry of the final judgment in the 2008 action, and therefore, Plaintiff's

claims for monetary relief against these Superior Court Judges arise from different facts than those alleged in the 2008 action. Accordingly, the Court finds that Plaintiff's claims for monetary relief against Judges Donohue, Shogan and Wecht are not barred by claim preclusion. Nonetheless, as discussed below, the Superior Court Judges are also entitled to absolute judicial immunity as to the monetary claims asserted against them.

> b. **Absolute Judicial Immunity**

To the extent that Plaintiff seeks monetary relief from the Judicial Defendants in their individual capacities, his claims for money damages are barred by the doctrine of absolute judicial immunity. A judicial officer has absolute immunity from suit for actions taken in his or her judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles*, 502 U.S. at 12); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000) ("The Supreme Court has long recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts.") (citations omitted). A judge does not forfeit that immunity simply because his or her action was erroneous, done maliciously, or exceeded his or her authority. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Judicial immunity does not apply to nonjudicial actions or to actions, that, while judicial in nature, are taken in the complete absence of all jurisdiction. *Mireles,* 502 U.S. at 12; *Gallas,* 211 F.3d at 768.

In the instant matter, all of the allegations in the Amended Complaint regarding the Judicial Defendants relate to actions taken within their judicial authority, and the Amended Complaint is devoid of any allegations that Plaintiff dealt with the Judicial Defendants in anything other than their judicial capacities. In particular, Plaintiff alleges that Judge Hathaway, in presiding over his divorce case which began in 2002, was required to rule on a divorce

contract entered into by Plaintiff and Tucciarone on May 23, 2000.  Am. Compl., ¶2.  In so doing, Judge Hathaway allegedly conspired with Tucciarone in ex-parte meetings to change previous court orders that she entered.  *Id.*  Plaintiff also alleges that Judge Hathaway was coaching Tucciarone on how to commit fraud on Plaintiff and the Westmoreland County courts.  In addition, Plaintiff alleges that Judge Hathaway went "outside the well grounded law concerning divorce contracts to fabricate, and make personal opinions, of why she was dismissing the divorce contract in retaliation/revenge for husband filing complaints against her[,]" and that Judge Hathaway's dismissal of the divorce contract violated the landmark ruling of the Pennsylvania Supreme Court in *Vaccarello v. Vaccarello*, 563 Pa. 93, 757 A.2d 909 (2000).  When Plaintiff appealed that ruling to the Pennsylvania Superior Court, Judge Hathaway allegedly contacted the appellate court and informed it that the appeal was interlocutory and, as a result, the superior court dismissed the appeal, allegedly in violation of Pennsylvania law.  Am. Compl., ¶3.

With regard to Master Fajt, Plaintiff alleges that Fajt was assigned to hear all issues of the divorce.  *Id.* at ¶3.  Plaintiff takes issue with Fajt's Final Report and other rulings, as well as Fajt's handling of hearings, in his divorce case.  *Id.* (ECF No. 9 at 3-6).

As to Judge Feliciani, Plaintiff takes issue with his ruling on various matters in his divorce case beginning on or around April 12, 2006.  *Id.* (ECF No. 9 at 3-4).  Plaintiff alleges that Judge Feliciani conspired with Master Fajt to legally harm him by ignoring the law to rule against him, thus denying him equal protection under the law.  *Id.* (ECF No. 9 at 4).  Plaintiff further alleges that Judge Feliciani and Master Fajt conspired to retaliate against him for filing many complaints, by awarding an unjustly high percentage of his assets to his wife in the equitable distribution.  *Id.* (ECF No. 9 at 5-6).  In addition, Plaintiff alleges that the Final Order

entered by Judge Feliciani on October 3, 2011 was defective and improperly filed. *Id.* (ECF No. 9 at 6).

Finally, with regard to Superior Court Judges Donohue, Shogan, and Wecht, Plaintiff takes issue with their ruling on his appeal of Judge Feliciani's October 3, 2011 order. Plaintiff asserts that these judges, by affirming Judge Feliciani's final order, "shirk[ed] their duty to read the Record, abide by their oath of office to follow the law and protect and defend the Constitution." *Id.* at ¶6. Thus, in doing so, these superior court judges allegedly conspired with the Defendants below to violate Plaintiff's rights under Sections 1983 and 1986 and his constitutional right to equal protection under the law. Plaintiff also takes these superior court judges to task for failing to publish their opinion, contending that the reason for doing so was that "it was a bad decision containing bad law with lies and inaccuracies and certainly reflected [Plaintiff's] Constitutional violation of his Rights to Equal Protection under the Law." *Id.*

As shown by the allegations described above, all of the Judicial Defendants were clearly acting within their judicial capacities in making all of the determinations that Plaintiff contends violated his rights, *see* 42 PA. CONS. STAT. ANN. §931(a), (b) (courts of common pleas), 42 PA. CONS. STAT. ANN §742 (superior court), and thus, were not acting in complete absence of all jurisdiction. Accordingly, Plaintiff's claims for monetary relief against the Judicial Defendants are barred by the doctrine of absolute judicial immunity, and therefore, the Court recommends that these claims be dismissed with prejudice.

### c. Eleventh Amendment Immunity

The Judicial Defendants are further immune from Plaintiff's § 1983 claims against them in their official capacities under the Eleventh Amendment. When a state official is sued in an official capacity, the real party in interest is the government entity that employs them. *Hafer v.*

*Melo*, 502 U.S. 21, 26 (1991).  The Eleventh Amendment proscribes actions in the federal courts against, *inter alia*, states and their agencies.[15]  *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981)  (Pennsylvania);  *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (state agencies).  "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it ... a State cannot be sued directly in its own name regardless of the relief sought."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).

In *Benn v. First Judicial District of Pa.*, 426 F.3d 233, 235 n. 1 & 240-41 (3d Cir. 2005), the Court of Appeals for the Third Circuit ruled that 60 judicial districts that comprise Pennsylvania's court system, which include *inter alia* the courts of common pleas, are state entities entitled to full Eleventh Amendment immunity.  *See also Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir.2000) ("All courts and agencies of the unified judicial system ... are part of 'Commonwealth government' and thus are state rather than local agencies.").  Moreover, as an agency or arm of the Commonwealth of Pennsylvania, the Court of Common Pleas of Westmoreland County and the Pennsylvania Superior Court are not  "persons" against whom a civil rights action may be brought under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, Plaintiff's claims against the Judicial Defendants in their official capacities are, in essence, claims against the Commonwealth of Pennsylvania,

---

[15] The Eleventh Amendment of the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

and therefore, are barred by Eleventh Amendment immunity unless one of the exceptions applies.

The courts have carved out three exceptions to Eleventh Amendment immunity, which will permit suit against a state or state agency:  "(1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm Corp. v. Bell Atlantic of Pa.,* 271 F.3d 491, 503 (3d Cir. 2001). None of these exceptions has been shown to apply here.  The Supreme Court has held that the Civil Rights Act does not abrogate a state's immunity under the Eleventh Amendment, insofar as states and their agencies are not "persons" subject to suit within the meaning of the Act.  *See Howlett v. Rose,* 496 U.S. 356, 376 (1990); *Will,* 491 U.S. at 65-66; *see also* 42 U.S.C. §1983. As to the waiver exception, "[t]he state either must voluntarily invoke [federal] jurisdiction by bringing suit . . . or must make a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *MCI Telecomm Corp.,* 271 F.3d at 504 (quoting *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 676 (1999)) (internal quotation marks omitted). Neither situation exists in the case at bar.   As to the third exception, the Amended Complaint does not seek prospective injunctive relief to enjoin ongoing violations of federal law.

Thus, none of the exceptions to Eleventh Amendment Immunity applies here, and therefore, Plaintiff's claims against the Judicial Defendants in their official capacities are barred by the Eleventh Amendment.  Therefore, the Court recommends that Plaintiff's claims against the Judicial Defendants in their official capacities be dismissed with prejudice.

### d.     Commonwealth of Pennsylvania is Also Immune
### From Suit Under the Eleventh Amendment

In addition, the Commonwealth of Pennsylvania ("Commonwealth"), which has also been named as a Defendant in this case, is immune from suit under the Eleventh Amendment for the same reasons set forth above with regard to the Judicial Defendants. Plaintiff's sole allegation in support of his claims against the Commonwealth is that the Commonwealth is responsible for the actions of its judges, who are immune from suit. Am. Compl., ¶5.

Pennsylvania statutory law provides that "the Commonwealth and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 PA. CONS. STAT. ANN. §2310. Moreover, 42 PA. CONS. STAT. ANN. §8521(b) provides that "[n]othing contained in this subchapter [Actions Against Commonwealth Parties] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." *See also Laskaris,* 661 F.2d at 25 ("by statute, Pennsylvania has specifically withheld consent" to suit in federal court). The statute enumerates nine exceptions to sovereign immunity at 42 PA. CONS. STAT. ANN. §8522; none of these exceptions is implicated here.

Accordingly, because the Commonwealth of Pennsylvania is a sovereign and has not expressly waived its immunity, and none of the exceptions enumerated in Section 8522 applies, the Court finds the Commonwealth is immune from liability for the claims asserted against it by Plaintiff. The Court notes, however, that service was never effectuated on the Commonwealth of Pennsylvania,[16] and therefore, no answer or motion to dismiss has been filed on its behalf.

---

[16] The docket indicates that no Summons/Return of Service Return Executed or Waiver of

Nonetheless, because the Commonwealth is immune from suit under the Eleventh Amendment, continuation of this lawsuit against it would be futile. Therefore, the Court recommends *sua sponte* dismissal of the Amended Complaint against the Commonwealth of Pennsylvania.

> **e.** **Claims for Monetary Relief Against Westmoreland County, Tucciarone, Wiker, Hathaway, Feliciani and Fajt are Time-Barred**

In addition, the claims against Westmoreland County, Tucciarone, Wiker, Judge Hathaway, Judge Feliciani, and Master Fajt for alleged violations of Plaintiff's civil rights and state common law torts are time-barred. The last alleged involvement by any of these Defendants occurred on or before October 3, 2011 when Judge Feliciani entered his final order in the divorce case. The Amended Complaint is completely devoid of any allegations showing any acts by these Defendants after that date.

The statute of limitations applicable to civil rights and common law tort claims is two years. *See Carpenter v. Young*, No. Civ. A. 04-927, 2005 WL 1364787, *4 (E.D.Pa. June 1, 2005) (statute of limitations for Section 1983 claims is the two-year statute of limitations for personal injury actions in Pennsylvania) (citing *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003); *Vitalo v. Cabot Corp.*, 399 F.3d 536, 542 (3d Cir. 2005)); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79-80 (3d Cir. 1989) (holding that Pennsylvania's two-year statute of limitations applies to Section 1985 claims and begins to run from the date of each overt act causing damage to plaintiff); 42 PA. CONS. STAT. ANN. §5524. Plaintiff commenced this lawsuit on May 12, 2014. More than two years has elapsed since the final order was entered on October

---

Service form was filed by Plaintiff as to the Commonwealth of Pennsylvania. Moreover, the time limit for effectuating service, i.e., within 120 days after the complaint is filed, has long since expired. FED. R. CIV. P. 4(m). Plaintiff's bare allegation that service was sent by certified mail to Governor Tom Corbett, Am. Compl. ¶5, is insufficient to prove service. *See* FED. R. CIV.

3, 2011 and the date this lawsuit was commenced. Moreover, the statute of limitations for bringing claims under Section 1986 is one year from the date the cause of action has accrued, which would have been October 3, 2011 for these Defendants. 42 U.S.C. §1986. Accordingly, Plaintiff's damage claims for alleged violations of his civil rights and common law torts by these Defendants are time-barred.[17]

### 3. Willful, Vexatious & Obdurate Conduct

Defendant Tucciarone submits that Plaintiff's claims, which involve the same state court domestic relations litigation and many of the same parties that he sued in the 2008 federal lawsuit, are frivolous, obdurate, and vexatious due to his complete disregard for the prior decisions of the federal courts. Tucciarone's Mot. to Dismiss, ¶¶8, 11 (ECF No. 30). Tucciarone further submits that Plaintiff's decision to reassert these claims in his Amended Complaint in the instant matter was done in blatant disregard of the decisions of the court of appeals and this Court, and thus, constitutes willful, vexatious, and obdurate conduct. *Id.* at ¶15.

Defendant Westmoreland County advances a similar argument based on Plaintiff's reassertion of his request for declaratory relief in his Amended Complaint here, in blatant disregard of this Court's previous ruling in his 2008 civil action and the affirmance of that ruling

---

P. 4(*l*).

[17] Westmoreland County also argues, correctly, that Plaintiff has failed to allege any personal involvement or acts by Westmoreland County and liability against it cannot be predicated on a theory of respondeat superior, *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988); *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005), which is fatal to Plaintiff's Section 1983 claim, and that Plaintiff has failed to allege any facts to show that it has a policy or practice that caused a deprivation of his civil rights as required to state a Section 1983 claim against a local government pursuant to *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658 (1978). In addition, Westmoreland County argues that it is immune from liability for tort claims under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §8541. The Court need not reach these arguments in light of its determination that Plaintiff's claims against Westmoreland County are time-barred.

by the U.S. Court of Appeals for the Third Circuit, wherein Plaintiff was clearly and unambiguously informed that federal courts do not have jurisdiction to overturn state court domestic relations orders. Westmoreland Cnty.'s Br. in Supp. of Mot. to Dismiss at 6 (ECF No. 15). Such conduct, Westmoreland County contends, is willful, vexatious, and obdurate. Westmoreland Cnty.'s Mot. to Dismiss, ¶17 (ECF No. 14). Westmoreland County further submits that Plaintiff was placed on notice that the previous decisions affected his declaratory judgment claims in the case at bar, when it filed its motion to dismiss Plaintiff's original complaint. Westmoreland Ctny.'s Br. in Supp. of Mot. to Dismiss at 7 n. 3. Nonetheless, Plaintiff failed to acknowledge or address the prior litigation, nor did he withdraw any claims. Consequently, Westmoreland County was required to expend resources to defend against Plaintiff's repeated demand that the federal court undo his divorce case. *Id.*

Plaintiff has not responded to the Defendants' arguments that by continuing to litigate clearly frivolous claims, he has engaged in willful, vexatious, and obdurate conduct. Given Plaintiff's status as a pro se litigant, the Court is reluctant to enter a finding on this issue until Plaintiff has been given an opportunity to respond directly to these accusations and the parties have fully briefed the issue. In addition, Defendants appear to be asking for such a finding in order to support a motion for attorneys' fees, should the Court grant their motions to dismiss. Thus, it is premature to make such a finding at this juncture. Once the District Judge enters an order on the motions, Defendants, if successful, may raise their arguments regarding Plaintiff's conduct in a petition for an award of attorneys' fees and supporting brief. Plaintiff will be given a full and fair opportunity to respond directly to those arguments, before the Court makes its determination.

### 4.    Plaintiff's Motions for Summary Judgment

Plaintiff has filed motions for summary judgment against Tucciarone (ECF No. 16) and Wiker (ECF No. 17), on all or part of the claims against them, because they allegedly never filed an answer to the Amended Complaint.[18]  *See* ECF No. 16 at 1; ECF No. 17 at 1; ECF No. 23 at 1.  Plaintiff has also filed a "Request to Enter Default" against Tucciarone (ECF No. 32), to which Tucciarone has filed a response (ECF No. 33).  Plaintiff's summary judgment motions are, in essence, requests for entry of default judgment, and the Court will treat them as such.[19]

Federal Rule of Civil Procedure 55, which governs the entry of default judgment, provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED.R.CIV.P. 55(a).  In deciding whether to enter default judgment, the court is required to consider three factors: "(1) prejudice to the moving party if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct, taken willfully and in bad faith."  *Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.,* 486 F.Supp. 2d 496, 502 (E.D.Pa. 2007) (citing *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir.2000)).  Even though a party may have made a proper showing under Rule 55, that party is not entitled to default judgment as of right; rather, "the entry of default is left to the 'sound judicial discretion' of the Court."  *Id.* (citing *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir.1984)). In exercising that discretion, the district court must keep in mind the

---

[18] In his summary judgment motion against Tucciarone, Plaintiff also goes on to discuss several elements of his divorce case that he claims Tucciarone cannot defend.  ECF No. 16 at 2. However, as discussed above, this Court lacks jurisdiction to consider any rulings entered in Plaintiff's divorce case by judges in the court of common pleas.

[19] Plaintiff's motions for summary judgment do not comply in any way with Western District Local Civil Rule 56.B, and thus, in no way resemble a motion for summary judgment in either

stated preference of the court of appeals, "that cases be disposed of on the merits whenever practicable." *Id.* (quoting *Hritz,* 732 F.2d at 1180); *see also Hill v. Williamsport Police Dep't,* 69 F. App'x. 49, 51 (3d Cir.2003) ("Our Court does not favor entry of defaults or default judgments . . . as it prefers adjudications on the merits.").

Here Tucciarone filed a motion for extension of time (ECF No. 25) to file her response to the summary judgment motion and/or a motion to dismiss or to otherwise plead, which this Court granted and imposed a new deadline of September 2, 2014 (ECF No. 26). On August 15, 2014, within the new deadline, Tucciarone filed a motion to dismiss (ECF No. 30). Plaintiff's request for entry of default (ECF No. 32) was filed on September 17, 2014, one month *after* Tucciarone filed her motion to dismiss the Amended Complaint in accordance with the Court's order extending her deadline for doing. Thus, Plaintiff's request for entry of default (ECF No. 32) and affidavit in support (ECF No. 32-1) misrepresented to this Court that Tucciarone had failed to plead or otherwise defend. In her response to Plaintiff's request for entry of default, Tucciarone, in addition to pointing out the above noted infirmity, brings the Court's attention to another misrepresentation by Plaintiff in a second affidavit (ECF No. 32-2)—that she failed to appear in this action. Tucciarone's Resp. at ¶7 (ECF No. 33).

Tucciarone also takes issue with Plaintiff's demand that judgment be entered in the amount of $800,000, despite this figure appearing nowhere in his Amended Complaint, arguing that pursuant to Rule 55, default judgment can only be entered for a monetary amount when such amount is readily ascertainable from the complaint, or when a "sum certain" can be readily calculated from the complaint. *Id.* at ¶¶7 & 8. Tucciarone maintains that it is not possible to calculate the damages claimed by Plaintiff based on the allegations contained in the Amended

form or substance.

Complaint. As such, Plaintiff was required to file a motion with the Court for entry of default judgment, as opposed to requesting the clerk enter default.

Although the Court agrees with Defendant Tucciarone, it is of no moment how Plaintiff requested default as he has not, and cannot, show entitlement to entry of default under either method. Entry of default is not warranted here because contrary to Plaintiff's sworn statements, Tucciarone is not in default, as she timely responded to his Amended Complaint. Accordingly, the Court recommends that Plaintiff's motion for summary judgment against Tucciarone, as well as Plaintiff's request for entry of default judgment, be denied.

As to the summary judgment motion against Wiker, the record shows that Wiker filed a motion to dismiss in response to the Amended Complaint on July 7, 2014, albeit seven days after the deadline for filing a response.[20] Nonetheless, the Court declines to find that Wiker was in default, as all three factors weigh against entering default. First, Plaintiff has failed to show how he will be prejudiced by allowing Wiker to file his response seven days out of time, nor can the Court envision any such prejudice. Second, as the Court has detailed above, Wiker has meritorious defenses to all of the claims asserted against him. Finally, there is no evidence here that Wiker's seven-day delay in filing his motion to dismiss was due to culpable conduct, or done willfully and in bad faith. Moreover, given the frivolous nature of Plaintiff's claims and the court of appeals' preference for disposing of claims on the merits, it would be unjust to find Wiker in default for a seven-day delay in responding to the Amended Complaint. Therefore, the Court recommends that Plaintiff's motion for summary judgment against Wiker be denied.

---

[20] Plaintiff maintains that Wiker's response to the Amended Complaint was due on June 27, 2014. However, pursuant to Federal Rule of Civil Procedure 6(d), Wiker's response was not due

E.  **Curative Amendment**

The court of appeals in *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008), has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." *See also Day v. Florida*, 743 F.3d 40, 43 (3d Cir. 2014).  As discussed above, Plaintiff's claims are barred by claim preclusion, *Rooker-Feldman*, *Younger* abstention, absolute judicial immunity, Eleventh Amendment immunity, and/or the applicable statute of limitations. Therefore, any amendment would be futile.  Moreover, it would be inequitable to allow Plaintiff another opportunity to litigate against the Defendants who have twice had to defend themselves against the same unmeritorious claims.  Accordingly, the Court recommends that a curative amendment not be allowed.

F.  **Conclusion**

For the foregoing reasons, it is respectfully recommended that Defendants' motions to dismiss (ECF Nos. 12, 14, 18, 30) be granted and the Amended Complaint be dismissed with prejudice. It is further recommended that the claims against the Commonwealth of Pennsylvania be *sua sponte* dismissed with prejudice.  It is further recommended that Plaintiff's motions for summary judgment (ECF Nos. 16 & 17)  be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto.  Any party opposing the objections shall have fourteen (14) days from the date of service of the

until June 30, 2014.

objections to respond thereto.  Failure to file timely objections shall constitute a waiver of any

appellate rights.

Dated:  January 30, 2015                                    BY THE COURT:


                                                               s/Lisa Pupo Lenihan
                                                           LISA PUPO LENIHAN
                                                           United States Magistrate Judge


cc:      Dr. Joseph A. Mayercheck, Pro Se
         10 Thomas Jefferson Court
         Irwin, PA  15642
         *Via. First Class, U.S. Mail*

         All Counsel of  Record
         *Via CM/ECF Filing*